**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| ITRIAN JIMINEZ, : | **Civil Action No. 19-12662 (SRC)** |
| : | |
| Plaintiff, : | |
| : | **OPINION** |
| v. : | |
| : | |
| COMMISSIONER OF : | |
| SOCIAL SECURITY, : | |
| Defendant. : | |
| : | |

**CHESLER, District Judge**

This matter comes before the Court on the appeal by Plaintiff Itrian Jiminez ("Plaintiff") of the final decision of the Commissioner of Social Security ("Commissioner") determining that she was not disabled under the Social Security Act (the "Act"). This Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g) and, having considered the submissions of the parties without oral argument, pursuant to L. C IV. R. 9.1(b), finds that the Commissioner's decision will be vacated and remanded.

In brief, this appeal arises from Plaintiff's application for disability and supplemental security income benefits, alleging disability beginning November 30, 2014. A hearing was held before ALJ Sharon Allard (the "ALJ") on November 29, 2017, and the ALJ issued an unfavorable decision on April 26, 2018. Plaintiff sought review of the decision from the Appeals Council. After the Appeals Council denied Plaintiff's request for review, the ALJ's decision became the Commissioner's final decision, and Plaintiff filed this appeal.

1

In the decision of April 26, 2018, the ALJ found that, at step three, Plaintiff did not meet or equal any of the Listings.  At step four, the ALJ found that Plaintiff retained the residual functional capacity to perform work at all exertional levels, with certain limitations, in particular a limitation to simple and routine tasks.  At step four, the ALJ also found Plaintiff did not retain the residual functional capacity to perform her past relevant work.  At step five, the ALJ determined, based on the testimony of a vocational expert, that there are jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ concluded that Plaintiff had not been disabled within the meaning of the Act.

On appeal, Plaintiff argues that the Commissioner's decision should be reversed and the case remanded on a number of grounds, but the Court need reach only the argument that succeeds: at step four, the ALJ improperly rejected the opinion of Plaintiff's treating physician, Dr. Marks.

At step four, the ALJ rejected Dr. Marks' opinions at two points in the written decision. At the first point, the ALJ rejected some of Dr. Marks' opinions on pages 26 and 27.  At the second point, the ALJ rejected some of Dr. Marks' opinions on pages 29 and 30.  At the first point, the ALJ rejected two of Dr. Marks' opinions as "conclusive" and as opining on matters reserved for the Commissioner.  (Tr. 27.)

The first opinion referenced by the ALJ has no date.  It contains a few paragraphs of general information about the diagnosis of neuromyelitis optica ("NMO"), and then states:

> Itrian Jiminez has brain and spinal cord lesions.  She regained significant improvement in her gait and her vision and is ambulatory. She has central cord lesions with permanent damage of sensory pathways.  Medication thus far has prevented further relapses but has not adequately treated the damage from prior

2

>inflammation. She has severe central neuropathic pain (burning, stabbing or electrical), muscle spasms, spastic bladder with recurrent infections, vision impairment, and depression. She cannot work, do daily activities, or enjoy simple pleasures without pain. She will sometimes be relatively controlled on medication, have a flare up. and then take days or weeks before she feels better. She is on multiple medications which require frequent adjustment and can cause drowsiness. She has frequent medical visits. She is depressed because of this constant battle with pain. She is not able to work, sustained concentrated activities, or reliably drive due to visual impairment from optic neuritis. She is completely and permanently disabled.

(Tr. 1208.)

The second opinion referenced by the ALJ appears at the end of a report on a follow-up visit, dated December 16, 2014. The ALJ appears to refer to a single sentence, which comes at the end of the report, and which states: "She is currently disabled because of chronic pain, medication side effects, and need for frequent medical follow up." (Tr. 582.)

The ALJ rejected these two opinions from Dr. Marks with the following explanation, here quoted in its entirety:

>However, such assessments are entitled to little weight when finding the claimant's residual functional capacity, as a determination of disability is a matter reserved to the Commissioner and delegated to the undersigned, Dr. Marks did not provide any specific insight into the nature and extent of the claimant's symptoms and corresponding functional limitations for basic work activities, and such assessments are in stark contrast to longitudinal neurology clinical notes that regularly reference a slow gait but intact strength, sensory, reflexes, ranges of motion, and coordination.
>
>Further, Dr. Marks' summary of the claimant's condition and symptoms is not fully consistent with the longitudinal medical records, including those from her own treatment of the claimant. Dr. Marks noted that the claimant's spinal cord lesions improved and the claimant "regained significant improvement in her gait and her vision," even specifying that the claimant is ambulatory, though she reported the claimant "cannot work, do daily activities, or enjoy simple pleasures without pain," which conflicts with the below medical records that establish consistently benign clinical findings upon full physical examinations performed by multiple providers. Further, her pain and symptoms are consistently recorded as stable or controlled, her doctors have cleared her for less frequent infusion

3

> therapies, and her subjective complaints of exacerbated pain or visual problems typically occurred just before and after an infusion therapy. There is little evidence that the claimant's subjective pain or weakness has been debilitating over any continuous 12-month period and the below records instead record intermittent and short exacerbations occurring months apart and not resulting in inpatient or emergency care. While Dr. Marks recorded that medications "may" cause drowsiness, the claimant's records do not regularly record such complaints from the claimant aside from related the infusion therapies (Ex. 22F at 1).

(Tr. 27.)

These two paragraphs identify three issues with the opinion evidence from Dr. Marks: 1) statements which are determinations of disability; 2) statements which provide no insight; and 3) statements in contrast with, or not fully consistent with, clinical notes.   The Court finds all of these to be problematic.

As to the first category, statements which are determinations of disability, and therefore which tread upon a legal conclusion reserved to the Commissioner, the Court finds that this is valid but only to a very minor extent.   The two opinions from Dr. Marks do indeed contain statements that Plaintiff is disabled which, as the ALJ explained, is a legal conclusion reserved to the Commissioner.   As the saying goes, however, one bad apple need not spoil the whole bunch: there is a great deal of evidence from Dr. Marks that says other things, and the presence of one minor element which may be properly rejected does not serve as a valid reason to reject everything else with it.

As to the second category, statements which provide no insight to Plaintiff's symptoms and functional limitations, the Court makes two observations.   First, the ALJ provided no citations to the record to identify the statements which fall within this category.   Second, the record does not appear to support the ALJ's characterization.   The December 16, 2014 clinical note, which ended with the statement of disability that the ALJ properly rejected, is five pages

4

long, and presents a wealth of medical information. (Tr. 578-82.) This Court has no medical expertise and cannot state any conclusions about the meaning of the additional information the clinical note states. It is, however, clear that Dr. Marks gave Plaintiff a diagnosis of continuing NMO and recommended continuing treatment, including treatment for pain and migraines. (Tr. 581.) The Court is not persuaded that this clinical note provides "no insight" into Plaintiff's symptoms and functional limitations. At a minimum, it is evidence of medically significant pain.

Nor does the undated statement from Dr. Marks support the ALJ's characterization of it as providing no insight into Plaintiff's symptoms and functional limitations. As quoted above, this statement is less technical and more amenable to comprehension by a lay reader. It presents what appears to be a detailed summary of Plaintiff's NMO, with considerable information about Plaintiff's symptoms and functional limitations. (Tr. 1208.) This document plainly does not support the rationale the ALJ gave for rejecting the opinions it contained.

As to the third category, statements in contrast with clinical notes, the Court is presented with an explanation that is inadequate, pursuant to Burnett. An ALJ need not "use particular language or adhere to a particular format in conducting his analysis," as long as "there is sufficient development of the record and explanation of findings to permit meaningful review." Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004). In the present case, the ALJ's decision does not contain sufficient explanation of the reasoning about contrast or inconsistency with clinical notes, nor does it contain any citations to the record: it does not identify specific statements made by Dr. Marks that are in conflict with specific statements in specific clinical notes, and does not permit meaningful review of this point. This part of the ALJ's

determination at step four is not amenable to meaningful review and must be vacated, pursuant to Burnett v. Commissioner of SSA, 220 F.3d 112, 119 (3d Cir. 2000). The ALJ's statements here are not substantially more informative than the conclusory statements found to be insufficient by the Third Circuit in Burnett: "We agree with Burnett the ALJ's conclusory statement in this case is similarly beyond meaningful judicial review." Id. at 119. The failure to satisfy the requirements of Burnett by itself requires that the Commissioner's decision be vacated and remanded.

The failure to satisfy the requirements of Burnett precludes meaningful review of this third category of rejected opinion statements. A thorough explanation would allow the reviewing Court to consider the next question, which is whether the ALJ's reasoning relied on improper speculation and lay opinion about medical records, pursuant to such cases as Morales and Brownawell. In Morales, the Third Circuit held:

> A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time. Where, as here, the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason. The ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled. In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion.

Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (citations omitted). See also Brownawell v. Comm'r of Soc. Sec., 554 F.3d 352, 357 (3d Cir. 2008) ("We have consistently held that it is improper for an ALJ to credit the testimony of a consulting physician who has not examined the claimant when such testimony conflicts with testimony of the claimant's treating physician.")

Two points from Morales must be noted. First, the ALJ may reject the treating physician's opinion outright – which the ALJ did here – only on the basis of contradictory medical evidence. The ALJ's failure to identify the evidence which allegedly contradicted Dr. Marks' statements prevents meaningful review of the ALJ's conclusion. Based on the inadequate explanation in the ALJ's decision, this Court cannot ascertain whether or not the ALJ properly rejected the treating physician's opinion on the basis of contradictory medical evidence. Second, the ALJ cannot reject evidence based on "his or her own credibility judgments, speculation or lay opinion." In the absence of an adequate explanation of the reasoning, this Court cannot ascertain whether the ALJ's lay opinion of the medical evidence played a significant role here. Certainly, the ALJ did not here cite any other medical opinion which supported the ALJ's rejection of the third category of statements from Dr. Marks.

As already stated, in addition, the ALJ further rejected some of Dr. Marks' opinions on pages 29 and 30. The analysis here is similar to that just presented and will be addressed more briefly. Here, however, the ALJ rejects the opinions in a form filled out by Dr. Marks, a form titled, "Residual Functional Capacity Questionnaire." (Tr. 1078-82.) Despite the fact that this form is expressly directed to functional limitations, the ALJ rejected it entirely, for the same reasons previously given. The ALJ again characterized the form as offering a conclusory decision reserved to the Commissioner, which is not supported by the contents of the form, which provide detailed support for the conclusion that Plaintiff is totally disabled. The ALJ found it to be internally inconsistent and, again, inconsistent with unspecified treatment notes. (Tr. 29.) This is unreviewable and problematic for the reasons already discussed. Once more, the ALJ did not provide an adequate explanation that would enable meaningful review, and the

7

Court once more cannot determine what role lay speculation played in the ALJ's rejection of this detailed functional assessment from Dr. Marks.

The ALJ's final statement about the rejection of the opinion of Dr. Marks does not appear to be supported by the evidence:

> Dr. Marks' assessment appears to be based substantially on the claimant's subjective reports of disability with notes from herself and other neurologists consistently establishing little or no clinical abnormalities to support her opinion.

(Tr. 30.)   The ALJ did not provide any basis for this statement, but even casual review of the clinical notes of Dr. Marks reveals that they are full of data from various objective assessments. Consider, as just one of a number of possible examples, the clinical note dated December 16, 2014, which has pages of description of the underlying objective medical evidence.   (Tr. 1054-58.)   While this note does contain some description of Plaintiff's subjective reports, most of the note deals with objective clinical data.   The characterization and dismissal of this evidence as an assessment based primarily on Plaintiff's subjective statements is not supported by substantial evidence.

The Commissioner, in opposition, largely summarizes the ALJ's statements about Dr. Marks approvingly.   The opposition brief emphasizes some of the evidence cited by Dr. Marks, including the MRI results which showed improvement and no new outbreaks of NMO.   (Def.'s Opp. Br. 14.)   Again, this appears to be lay speculation about medical evidence.   Patients with a disease may show improvement short of cure.   The Court notes that the Commissioner does not point to any medical opinion which says, simply, Plaintiff's NMO is now in remission.   The ALJ treats the evidence as if it was tantamount to such a statement, but cites no such medical opinion.   In the absence of any medical evidence, this conclusion appears to be lay speculation.

Similarly, both the ALJ and the Commissioner's opposition brief offer lengthy string cites to pages in the record which, the Commissioner contends, present contrary clinical evidence. This is one of the most troubling problems in this case: is the Commissioner's lay opinion about whether certain clinical data – cherry-picked from the record and taken out of context – contradict certain expert medical opinions legally valid? The Commissioner has not even attempted to persuade this Court that such opinions are permissible under Third Circuit law, as stated in cases such as Morales. The Commissioner's opposition brief ignores Morales.

The opposition brief does, however, address Brownawell, and attempts to distinguish it on the ground that, in Brownawell, the ALJ relied on factual assertions which were clearly erroneous, which, the Commissioner contends, is not the case here. (Def.'s Opp. Br. 16.) This Court does not agree with the Commissioner's reading of Brownawell but need not reach that issue, because this Court has already determined that, in the instant case, the ALJ relied on factual assertions which are clearly erroneous, as already discussed. The Commissioner has failed to distinguish Brownawell, which is quite apposite. Brownawell stands for the proposition that, when an ALJ rejects a treating physician's opinion in favor of the opinion of a consultant who has not seen the patient, the reviewing Court examines the ALJ's decision to discredit the treating physician to determine whether it is supported by substantial evidence. Brownawell, 554 F.3d at 357. For the reasons already stated, this Court concludes that, in the instant case, the ALJ's decision to discredit Dr. Marks is not supported by substantial evidence.

This Court thus finds two reasons to vacate the Commissioner's decision. As discussed, in part, the ALJ failed to give an adequate explanation of her reasoning in rejecting the opinion of Dr. Marks, and the decision must be vacated, pursuant to Burnett. In part, to the extent that

9

the ALJ explained that decision, this Court finds that it is not supported by substantial evidence, and the decision must be vacated, pursuant to Morales and Brownawell.

For these reasons, this Court finds that the Commissioner's decision is, in part, not amenable to meaningful review, and, in part, not supported by substantial evidence. The Commissioner's decision is vacated and remanded for further proceedings in accordance with this Opinion.

      s/ Stanley R. Chesler
    STANLEY R. CHESLER, U.S.D.J.

Dated: August 28, 2020

10